IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VINCENT TRAN,                                    06-CV-1810-BR

       Plaintiff,                         OPINION AND ORDER

v.

TYCO ELECTRONICS,
CORPORATION, A foreign
business corporation
registered in Pennsylvania,
DBA TYCO ELECTRONICS
PRECISION INTERCONNECT,

       Defendant.


**VINCENT TRAN**
16100 S.E. Mill Street
Portland, OR  97233
(503) 760-3833

       Plaintiff, *Pro Se*

**LEAH S. SMITH**
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
(602) 778-3709


1 - OPINION AND ORDER

**DAVID J. RIEWALD**
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway
Suite 1900
Portland, OR 97205
(503) 248-1134

      Attorneys for Defendant

**BROWN, Judge.**

     This matter comes before the Court on Defendant's Motion for Summary Judgment (#63).  For the reasons that follow, the Court **GRANTS** Defendant's Motion.


<u>**BACKGROUND**</u>

     In 1992 Precision Interconnect hired Plaintiff Vincent Tran, a Vietnamese male, as a Senior CAD Operator.  In 1996 Precision Interconnect promoted Plaintiff to the position of Design/Drafter.  In 1999 Precision Interconnect was acquired by Tyco Healthcare, but former Precision Interconnect employees continued to use their previous job titles.

     In 2001 Tyco Healthcare required all former Precision Interconnect employees to be assigned Tyco Healthcare job titles so they could be placed in Tyco Healthcare's Human Resources database and payroll system.  Accordingly, Tyco Healthcare's Human Resources Department assigned Tyco Healthcare job titles to all former Precision Interconnect employees based on the criteria for each job code, including the employee's "job level."  As a

2 - OPINION AND ORDER

result of the conversion, the job titles of Plaintiff and Gary Scott, a Caucasian male, changed from Design/Drafter to Senior Drafter. The titles of at least two other employees in Plaintiff's department also changed from Designer to Design Drafter. Plaintiff's job duties and rate of pay did not change.

On January 14, 2003, Plaintiff complained to Human Resources about the change in his job title. On January 16, 2003, Plaintiff complained to Bruce Barney, his Supervisor at the time, that the change in his job title was a demotion based on Plaintiff's race or age. Both Human Resources and Barney told Plaintiff that he was not demoted; that Tyco Healthcare did not have a position that corresponded to Design/Drafter; and, therefore, that Plaintiff was made a Senior Drafter.

In September 2003, Tyco Healthcare transferred Precision Interconnect to Defendant Tyco Electronics.

On April 24, 2004, and June 11, 2004, Defendant posted openings for the positions of Design Drafter and Drafter respectively on its intranet site. Plaintiff did not apply for either of these positions. Defendant, therefore, did not consider Plaintiff as a candidate for either position.

In September 2005, Defendant reorganized its Design Services Department into two departments. As part of the reorganization, Defendant transferred several employees, including Plaintiff and Scott, to its Documentation Services Department. Evelyn King

3 - OPINION AND ORDER

became Plaintiff's supervisor in October 2005.

Defendant's fiscal year runs from October 1 to September 30, and employee evaluations are typically completed at the end of the fiscal year.  King solicited feedback from Barney as to Plaintiff's performance before October 2005 to facilitate Plaintiff's FY 2005 evaluation.  King also observed the performance of Plaintiff and other recently transferred employees between October 2005 and January 2006.  In January 2006, King rated Plaintiff's performance as "below expectations" for FY 2005 based on Barney's feedback and her own experience as Plaintiff's supervisor.

In January and February 2006, King verbally counseled Plaintiff on performance deficiencies such as the number and frequency of errors in his work, the low quantity of work he completed, and his failure to follow directions.  Between January and March 2006, King discussed with Plaintiff errors in his work at least eight times.  On March 24, 2006, King issued a written performance warning to Plaintiff in which she reviewed her previous verbal warnings, noted Plaintiff's lack of improvement, set out goals for Plaintiff to achieve, and advised Plaintiff that she would take further disciplinary action "including suspension and/or immediate termination" if he did not improve his performance.  Plaintiff signed the warning acknowledging that he received it.

4 - OPINION AND ORDER

On May 4, 2006, Plaintiff filed a complaint simultaneously with the Oregon Bureau of Labor and Industries (BOLI) and the Equal Employment Opportunity Commission (EEOC).

In late May 2006, King modified Plaintiff's job duties by reducing his drawing to one type and assigning Plaintiff other duties within the department such as multimedia and document distribution, which she believed would reduce his errors as well as the time required to review his work.

On December 19, 2006, Plaintiff filed a Complaint in this Court seeking damages on the grounds that Defendant violated (1) Title VII, 42 U.S.C. § 2000e-2(m); (2) 42 U.S.C. § 1981; and (3) Oregon Revised Statutes § 659A.030 when it modified Plaintiff's job duties.  Plaintiff also alleged a claim for intentional infliction of emotional distress (IIED).

On January 29, 2007, Defendant filed a Motion to Dismiss Plaintiff's claims for violation of Title VII and Oregon Revised Statutes § 659A.030 as untimely and to dismiss Plaintiff's IIED claim for failure to state a claim.

On April 24, 2007, the Court issued an Opinion and Order granting Defendant's Motion on the grounds that (1) Plaintiff's Title VII claim was untimely, (2) Plaintiff's § 659A.030 claim was untimely, and (3) the change in Plaintiff's job title alone was insufficient to state a claim for intentional infliction of emotional distress.  Because Plaintiff appeared *pro se*, the Court

granted Plaintiff leave to amend his Complaint to attempt to cure the deficiencies identified in the Court's Opinion and Order.

On July 31, 2007, Plaintiff filed an Amended Complaint in which he again alleged Defendants violated (1) Title VII, 42 U.S.C. § 2000e-2(m); (2) 42 U.S.C. § 1981; and (3) Oregon Revised Statutes § 659A.030 when it changed Plaintiff's job title, did not select him for the Design Drafter or Drafter positions open in 2004, included the months of October-January in his FY 2005 performance evaluation, and changed his work duties in 2006. Plaintiff also alleged claims for IIED and negligent infliction of emotional distress (NIED) as well as a claim for fraud.

On August 17, 2007, Defendant filed a Motion to Dismiss Plaintiff's fraud claim and Plaintiff's claims for violation of Title VII and Oregon Revised Statutes § 659A.030 as untimely and to dismiss Plaintiff's claims for IIED and NEID for failure to state a claim.

On December 7, 2007, the Court issued an Opinion and Order in which it granted Defendant's Motion to Dismiss.  Plaintiff's only remaining claims are against Defendant for violation of § 1981.

On May 27, 2008, Defendant moved for summary judgment as to

Plaintiff's claims under § 1981.[1]

**<u>STANDARDS</u>**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v.*

---

[1] On June 2, 2008, the Court issued a Summary Judgment Advice Notice advising Plaintiff that if he did not submit evidence in opposition to any motion for summary judgment, summary judgment would be entered against him if it was appropriate.

*Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9ᵗʰ Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9ᵗʰ Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9ᵗʰ Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9ᵗʰ Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9ᵗʰ Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9ᵗʰ Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Defendant moves for summary judgment as to Plaintiff's remaining claims for violation of § 1981.

## I.    42 U.S.C. § 1981.

Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United
> States shall have the same right in every State
> and Territory to . . . the full and equal benefit

> of all laws and proceedings for the security of
> persons and property as is enjoyed by white
> citizens.

To establish a claim under § 1981, a plaintiff must meet the same standards that are required to establish a claim under Title VII. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir. 2003)("We also recognize that those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action."). *See also EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n.7 (9th Cir. 1984)("A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a . . . claim under Title VII.").

In addition, the burden-shifting analysis of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to claims of discrimination brought under § 1981. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008). Initially, therefore, the plaintiff has the burden to establish a *prima facie* case of racial discrimination. If he does so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Finally, if the defendant carries its burden, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons were merely a pretext for discrimination. *Burdine*, 450 U.S. at 252-53. *See also McDonnell Douglas Corp.,* 411 U.S. at 802-04. Even

though the *McDonnell Douglas/Burdine* test shifts the burden of producing evidence, it does not relieve a plaintiff of his ultimate burden to prove discriminatory intent by a preponderance of the evidence. *Burdine*, 450 U.S. at 253 (citation omitted).

## II.  Plaintiff's discrimination claim under § 1981.

Plaintiff contends Defendant discriminated against him in violation of 42 U.S.C. § 1981 when it did not select him for the Design Drafter and Drafter positions open in 2004, changed Plaintiff's job title, included the months of October-January in his FY 2005 performance evaluation, required him to correct errors in his work, and changed his job duties in late May 2006.

### A.    Failure to select for two job positions.

To establish a *prima facie* case of discrimination based on Defendant's failure to select Plaintiff for either the Design Drafter or Drafter positions, Plaintiff must show:

> (1) he is a member of a protected class; (2) he applied for a job for which he was qualified; (3) he was rejected; and (4) the position remained open and the employer sought other similarly-qualified employees.

*Surrell*, 518 F.3d at 1105-06 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

It is undisputed that Plaintiff did not apply for the Design Drafter and the Drafter positions even though he was aware of both openings.  Plaintiff, therefore, has not established a *prima facie* case of discrimination based on Defendant's failure

10 - OPINION AND ORDER

to select him for these positions.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's claim that Defendant violated § 1981 when it did not select him for the Design Drafter or Designer positions in 2004.

**B.    Change of job title, FY 2005 performance evaluation, and requirement to fix work errors.**

As noted, Plaintiff contends Defendant discriminated against him in violation of § 1981 when it changed his job title, included the months of October-January in his FY 2005 performance evaluation, and required him to fix errors in his work.

To establish a *prima facie* case for discrimination under § 1981, a plaintiff

> must offer proof:  (1) that the plaintiff belongs to a class of persons protected by [§ 1981]; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff.

*Cornwell v. Electra Cent. Cred. Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)(citation omitted)(applying Title VII standard).

It is undisputed that Plaintiff belongs to a protected class under § 1981.  Defendant, however, asserts Plaintiff did not suffer an adverse employment action; Plaintiff was not performing his job satisfactorily; and Plaintiff was not treated

differently from Gary Scott, a similarly situated Caucasian employee.

**1.   Change in Plaintiff's job title.**

Plaintiff contends he suffered an adverse employment action when Defendant changed his job title from Design Drafter to Senior Drafter.  Plaintiff concedes, however, that his pay and job duties did not change as a result of the altered job title.  On this record, the Court, therefore, concludes the change in Plaintiff's job title was not an adverse employment action.

Even if the change in Plaintiff's job title had been an adverse employment action, the record reflects Defendant changed the job titles of other similarly situated employees who did not belong to Plaintiff's protected class.  For example, Defendant also changed the job title of Gary Scott, a Caucasian male, from Design Drafter to Senior Drafter at the same time that Plaintiff's job title was changed.

Accordingly, the Court concludes on this record that Plaintiff has not established a *prima facie* case of discrimination under § 1981 based on the change in his job title. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's § 1981 claim based on the change in his job title.

12 - OPINION AND ORDER

**2.    Plaintiff's 2005 performance evaluation.**

Plaintiff contends Defendant discriminated against him when it included the months of October 2005 to January 2006 in his FY 2005 performance evaluation.

Even if Defendant's inclusion of three additional months in Plaintiff's performance evaluation was an adverse employment action, which is questionable, the record reflects Defendant did the same with all of the employees supervised by King in October 2005, including Gary Scott.  Plaintiff, nevertheless, maintains King did not include the months of October 2005 through January 2006 in her evaluations of two other Caucasian employees.  The record, however, reflects King did not supervise those two employees until October 2006 and October 2007 respectively.  In other words, King did not perform evaluations on these employees for FY 2005.

On this record, the Court concludes Plaintiff has not established a *prima facie* case of discrimination under § 1981 based on his FY 2005 performance evaluation.  Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs § 1981 claim based on the FY 2005 performance evaluation.

**3.    Correction of work errors.**

Plaintiff also contends Defendant discriminated against him in violation of § 1981 because King required him to

13 - OPINION AND ORDER

correct errors in his work even though she did not require Gary
Scott or Jason Woods to do the same.

     As a threshold matter, it is questionable whether
requiring an employee to correct errors in his work is an adverse
employment action.  Even if the Court concluded Defendant's
requirement that Plaintiff correct errors in his work was an
adverse employment action, however, Plaintiff does not allege
King fabricated errors in Plaintiff's work nor does he present
any evidence that King intentionally ignored errors in work done
by other similarly situated employees.  In fact, Plaintiff
conceded at his deposition that King occasionally missed errors
in Plaintiff's work and that he does not know how many times King
required Plaintiff's peers to correct their work errors.
Moreover, King testifies in her Declaration that she required all
of the employees under her supervision to correct the errors she
found in their work.

     In any event, the record reflects King did not
supervise Woods nor does she review his work.  As noted,
Plaintiff also has not established that King intentionally
ignored errors in work done by Scott or other similarly situated
employees under King's supervision.

     On this record, the Court concludes Plaintiff has
not established that King treated Plaintiff differently than she
treated other similarly situated employees who do not belong to

14 - OPINION AND ORDER

the same protected class as Plaintiff.  Accordingly, the Court
grants Defendant's Motion for Summary Judgment as to Plaintiff's
claim for discrimination under § 1981 based on Defendant's
requirement that Plaintiff correct his work errors.

### C.  Change in Plaintiff's work duties.

As noted, King changed Plaintiff's work duties in late
May 2006 in that she restricted Plaintiff to one kind of drawing
and assigned him other duties within the department, including
multimedia and document distribution.  Defendant does not appear
to dispute that the change in Plaintiff's job duties constitutes
an adverse employment action and that the job duties of other
similarly situated employees who were not in the same protected
class as Plaintiff remained unchanged.  Defendant, however,
asserts Plaintiff's work duties were changed because he was not
performing his job satisfactorily.

The record reflects Plaintiff was coached regarding low
production four times in 2002, two times in 2003, and five times
in 2005 before King became his supervisor.  In addition,
Plaintiff was counseled six times in 2005 and four times in 2006
regarding work errors before King issued a written warning to
Plaintiff in March 2006.  In the written warning, King detailed
her issues with Plaintiff's work performance and advised
Plaintiff that he would face disciplinary measures if he did not
improve his performance.

15 - OPINION AND ORDER

Although Plaintiff asserts in his Memorandum in Response to Defendant's Motion that he received good customer-service comments, the record reflects only one email from another employee on September 18, 2007, in which she thanks Plaintiff for covering for her when she was on medical leave and states Plaintiff did a "great job." In addition, this comment was written 16 months after King changed Plaintiff's job duties and does not establish that Plaintiff was performing his assigned duties before May 2006 in a satisfactory manner. In any event, Plaintiff's unsupported assertion that he was performing his job adequately is not sufficient to rebut King's explanation and the evidence in the record. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)("[A]n employee's subjective personal judgments of [his] competence alone do not raise a genuine issue of material fact.").

On this record, the Court concludes Plaintiff has not established that he was performing his job satisfactorily in May 2006, and, therefore, Plaintiff has not established a *prima facie* case of discrimination under § 1981 based on the change in his work duties. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's § 1981 claim based on the change in his work duties in late May 2006.

**III. Plaintiff's retaliation claim under § 1981.**

Plaintiff contends King made him correct errors in his work

16 - OPINION AND ORDER

and changed his job duties in retaliation for Plaintiff's filing
of his May 4, 2006, BOLI complaint.

To establish a *prima facie* case of retaliation under § 1981,
a plaintiff must show:

> (1) [he] engaged in a protected activity, such as
> the filing of a complaint alleging racial
> discrimination, (2) the [defendant] subjected
> [him] to an adverse employment action, and (3) "a
> causal link exists between the protected activity
> and the adverse action."

*Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003)(quoting
*Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)).

### A.    Correction of work errors.

As the Court noted earlier, it is questionable whether
the requirement that Plaintiff correct errors in his work
constitutes an adverse employment action.  Even if the Court
concluded it did, Plaintiff has not established a causal
connection between King requiring him to correct errors in his
work and the filing of his BOLI complaint.  Plaintiff alleges
King required him to correct errors in his work before May 2006.
Plaintiff, however, did not file a complaint with BOLI until
May 4, 2006.  King's behavior before May 4, 2006, therefore,
could not have been motivated by a desire to retaliate for the
filing of Plaintiff's BOLI complaint.  *See Wheeler v. Ariz. Dep't*

*of Corr.*, No. CV-06-2011-PHX-DGC, 2008 WL 724982, at *3 (D. Ariz. Mar. 17, 2008)("'Obviously, if a charge is not filed with the EEOC until after the discharge, the latter cannot be motivated by a desire to retaliate for the former.'")(internal citations omitted).

On this record, the Court concludes Plaintiff has not established a *prima facie* case of retaliation under § 1981 based on King's requirement that Plaintiff correct errors in his work. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's § 1981 retaliation claim based on the requirement to correct errors in his work.

**B.    Change in job duties.**

Plaintiff contends King changed Plaintiff's job duties in retaliation for his filing of a BOLI complaint.  Plaintiff asserts the temporal proximity between the filing of his BOLI complaint and the changing of his job duties establishes the causal-connection prong of his retaliation claim.

To establish a *prima facie* case of retaliation, the court may infer a causal link from two elements of circumstantial evidence:

> (a) the decisionmaker knew of the plaintiff's protected activity at the time the adverse action was taken; and (b) there was proximity in time between the protected action and the allegedly retaliatory employment decision.

*Stimson v. Potter*, No. C 05-0411 PJH, 2006 WL 449133, at *5 (N.D. Cal. Feb. 22, 2006)(citing *Yartzoff v. Thomas*, 809 F.2d 1371,

18 - OPINION AND ORDER

1376 (9th Cir. 1987)), *overruled on other grounds by Payan v.*
*Aramark Mgmt. Serv. Ltd. Partnership*, 495 F.3d 1119 (9th Cir.
2007).

Here the record reflects Plaintiff filed his BOLI
complaint on May 4, 2006, and King changed Plaintiff's job duties
at some point in May.  These two events occurred close in time.
King testifies in her Declaration, however, that she did not
learn about Plaintiff's May 4, 2006, BOLI complaint until
July 10, 2007.  Plaintiff conceded in his deposition that he does
not have any evidence that King knew Plaintiff had filed a BOLI
complaint or that Defendant learned about Plaintiff's BOLI
complaint before King changed Plaintiff's job duties nor does
Plaintiff offer any evidence in his Response to Defendant's
Motion to show that King or Defendant knew about Plaintiff's BOLI
complaint before King changed Plaintiff's job.

On this record, the Court concludes Plaintiff has not
established a *prima facie* case of retaliation by showing a causal
connection between the change in his job duties and the filing of
his May 4, 2006, BOLI complaint.  In addition, even if Plaintiff
had established a *prima facie* case of retaliation based on the
change in his job duties, Defendant has proffered a legitimate,

19 - OPINION AND ORDER

nondiscriminatory reason for changing Plaintiff's duties:
Plaintiff was not able to perform adequately the duties he was
assigned, and, therefore, to reduce his errors, King assigned him
jobs that she believed he could perform accurately. Defendant
also points out Plaintiff's record of disciplinary actions
related to poor work performance. Plaintiff, on the other hand,
has not identified any evidence in the record to rebut
Defendant's legitimate, nondiscriminatory reason or to establish
that Defendant's reason is mere pretext.

Accordingly, the Court grants Defendant's Motion for
Summary Judgment as to Plaintiff's claim for retaliation under
§ 1981 based on the change in his work duties.

**IV.  Plaintiff's hostile work environment claim.**

In his Response to Defendant's Motion for Summary Judgment,
Plaintiff alleges for the first time that Defendant subjected him
to a hostile work environment. Plaintiff did not plead a claim
based on a hostile work environment in either his original or
Amended Complaints nor did he seek to amend his Complaint to
include a hostile work environment claim. Plaintiff, therefore,
may not bring a hostile work environment claim at this late stage
of the proceedings.

Accordingly, the Court will not address Plaintiff's hostile

20 - OPINION AND ORDER

work environment allegations as these are not properly before the Court.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#63).

IT IS SO ORDERED.

DATED this 25th day of September, 2008.


/s/ Michael W. Mosman for
_____
ANNA J. BROWN
United States District Judge


21 - OPINION AND ORDER